DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant Stephen Hall has appealed from a judgment of the Summit County Common Pleas Court that found him guilty on charges of rape and gross sexual imposition. This Court affirms.
 I.
On April 20, 1999, the Summit County Grand Jury indicted Defendant on three counts of rape and three counts of gross sexual imposition. The victim in this case was Defendant's four-year old daughter, Isabella. Defendant entered a plea of not guilty, and the case proceeded to a jury trial. On April 4, 2000, a jury found Defendant guilty on all counts. The trial court sentenced Defendant accordingly. Defendant timely appealed, asserting twelve assignments of error. For ease of discussion, this Court has consolidated some of Defendant's arguments.
 A. Assignment of Error Number One The [trial] court improperly allowed William Evans, II., a former police officer who assisted the Tallmadge police in their interrogation of Defendant, to testify as an expert in this matter.
In his first assignment of error, Defendant has argued that the trial court erred when it allowed William Evans to testify as an expert. First, Defendant has argued that pursuant to Evid.R. 702, the trial court should not have qualified Evans as an expert. Secondly, Defendant has asserted that Evan's testimony mislead the jury by suggesting that there was an implicit confession. This Court will address each argument in turn.
 1. Qualifying Evans as an Expert
Evid.R. 702 provides, in pertinent part:
A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 (2) The design of the procedure, test, or experiment reliably implements the theory;
 (3) The particular procedure, test, or experiment was conducted in a way that will
At trial, the State introduced Evans as a specialist in interview techniques. Because there was no objection to the trial court qualifying Evans as an expert, this Court can only take notice of the error if it rises to the level of plain error. See Crim.R. 52(B). "Notice of Plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In reviewing the record, this Court concludes that the trial court did not err in declaring Evans an expert. The record showed that Evans had extensive training and experience in the field of interviewing witnesses. Accordingly, Defendant's argument that Evans was not an expert is not well taken.
 2. Evan's Testimony
In the present case, Evans testified about his interview with Defendant. Evans stated that he asked Defendant four particular questions relating to the alleged sexual abuse. He testified that Defendant answered no to three of the four questions. For the fourth question, Evans testified that Defendant was unable to recall whether his penis had touched Isabella's vagina. Evans stated that Defendant's answer concerned him.
Defendant has argued that Evan's testimony suggests that Defendant confessed to the alleged incident. Although Evan's comment that "Defendant's answer concerned him" was not necessary and somewhat tainted, the evidence to support Defendant's guilty verdicts was overwhelming. Pursuant to Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Moreover, "such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." See State v. Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus. As discussed, infra, in this Court's analysis of Defendant's tenth and eleventh assignments of error, even excluding Evan's testimony, the evidence presented proves beyond a reasonable doubt that Defendant committed the alleged offenses. Therefore, any error that occurred in the improper admission of Evan's comment was harmless error. Defendant's first assignment of error is overruled.
 B. Assignment of Error Number Two The [trial] court improperly allowed testimony from Michelle chock, a teacher at Color Our Rainbow Academy, over objection, that [Isabella] had touched a boy's private; that [Isabella] and a boy were hitting their rear end's together; and that another boy claimed that [Isabella] had tried to touch his penis[.]
In his second assignment of error, Defendant has argued that the trial court erred when it allowed Michelle Schock to testify because her testimony was based on hearsay. This Court disagrees.
Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). To constitute hearsay, two elements are required. "First, there must be an out-of-court statement. Second, that statement must be offered to prove the truth of the matter asserted."State v. Maurer (1984), 15 Ohio St.3d 239, 262. If either element is missing, the testimony is not hearsay. Id.
A review of the record reveals that Schock testified that she witnessed Isabella and another boy hitting their rear ends together and saw Isabella touch a boy's private area. This testimony concerned Schock's personal observation of the events; thus, the testimony was not hearsay.
Defendant has also argued that Schock's testimony in which she stated that a boy told her that Isabella had tried to touch his penis was hearsay. Assuming arguendo, the error is harmless because the remaining evidence constitutes overwhelming proof of Defendant's guilt. SeeWilliams, 6 Ohio St.3d at paragraph six of the syllabus. Therefore, this Court cannot say that the outcome of the trial would have been different without the admission of the statement. Defendant's second assignment of error is overruled.
 C. Assignment of Error Number Three Prior to the testimony of Loreen Hall, Defendant's mother, and at the sole request of the State and not at the witness Hall's request, the trial court, without [an in camera] examination ordered Stephen Hall, Sr. from the courtroom.
In his third assignment of error, Defendant has asserted that his Sixth Amendment right to confront a witness was violated when the trial court ordered his father out of the courtroom during his mother's testimony. This Court is compelled to mention that the Sixth Amendment only guarantees Defendant's right to confront a witness. Further, the record reveals that Defendant was not ordered out of the courtroom. Lastly, Defendant has failed to cite to any legal authority that extends the right to confront a witness to Defendant's father. In light of the foregoing, his third assignment of error is without merit.
 D. Assignment of Error Number Four The [trial] court improperly allowed in hearsay statements of [Isabella] pursuant to Evid.R. 807.
 Assignment of Error Number Five The trial court made an improper finding of independent proof of the testimony from Witness Kohl and Witness Abbott[1]
that [Isabella] utilized anatomical dolls in a fashion that demonstrated sexual abuse to her.
In his fourth assignment of error, Defendant has challenged the trial court's finding that Isabella was competent at the time she made any hearsay statements. Defendant has also argued in his fourth and fifth assignments of error that the trial court erred when it found the hearsay statements admissible pursuant to Evid.R. 807. This Court will first address the issue of Isabella's competency and then discuss the admissibility of her statements.
As a preliminary matter, the admission or exclusion of evidence and the determination of competency rests within the sound discretion of the trial court. State v. Clark (1994), 71 Ohio St.3d 466, 469. The decision of the trial court will not be disturbed on appeal absent a showing of an abuse of discretion. See State v. Bresson (1990), 51 Ohio St.3d 123,129. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id.
Evid.R. 601(A) presumes that children under the age of ten are incompetent to testify. Clark, 71 Ohio St.3d at 469. The burden is on the party seeking to introduce the child's testimony to overcome the presumption. Id. The Ohio Supreme Court has established five factors that a trial court must consider when determining whether a child is competent to testify:
 (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and, (5) the child's appreciation of his or her responsibility to be truthful.
State v. Frazier (1991), 61 Ohio St.3d 247, syllabus, certiorari denied (1992), 503 U.S. 941, 117 L.Ed.2d 629.
During the evidentiary hearing, Isabella knew her name, age, her school, her teacher's name, and where she resided. Her answers to other questions demonstrated her capacity to distinguish between truth and falsity. For instance, Isabella stated that the truth was a good thing, that a lie was a bad thing, and that if she told a lie she would get in trouble. The trial court was correct in determining that Isabella was competent at the time she made the statements. Therefore, Defendant's argument that Isabella was not competent is without merit.
Evid.R. 807 recognizes a hearsay exception for the statements of children under the age of twelve relating to an alleged sexual abuse. The child's statements may be admitted if all of the following requirements are met:
 (1) The court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to Evid.R. 803 and 804. The circumstances must establish that the child was particularly likely to be telling the truth when the statement was made and that the test of cross-examination would add little to the reliability of the statement. In making its determination of the reliability of the statement, the court shall consider all of the circumstances surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement. In making this determination, the court shall not consider whether there is independent proof of the sexual act or act of physical violence.
 (2) The child's testimony is not reasonably obtainable by the proponent of the statement.
 (3) There is independent proof of the sexual act or act of physical violence.
 (4) At least ten days before the trial or hearing, a proponent of the statement has notified all other parties in writing of the content of the statement, the time and place at which the statement was made, the identity of the witness who is to testify about the statement, and the circumstances surrounding the statement that are claimed to indicate its trustworthiness.
Evid.R. 807.
This Court will discuss each of the four requirements separately.
 1. Particularized Guarantees of Trustworthiness
Because Defendant has only referred to a statement that Isabella made to her preschool teacher, Michelle Schock, this Court will only discuss that particular statement.[2] According to Schock, Isabella stated, "I don't like my father because he hurts me." There is no evidence in the record that Schock asked Isabella any leading or suggestive questions that prompted Isabella's response. Lastly, the record reveals that Isabella's statement was consistent with other statements concerning her father throughout the investigation. Under these circumstances, the trial court was correct in finding the statement trustworthy. See State v.Steeg (Apr. 30, 1997), Summit App. No. 17930, unreported, at 12.
 2. Testimony Not Reasonably Obtainable
The record of the hearing reveals that Isabella was uncooperative when asked about the statements she made regarding Defendant. At one point, Isabella admitted that she was embarrassed. It also appeared that Isabella was unable to remember the statements. Based on the foregoing, this Court concludes that the trial court complied with the second requirement of Evid.R. 807(A). See State v. Robertson (Feb. 2, 2000), Summit App. No. 19072, unreported, at 8-9.
 3. Independent Evidence of Proof
At the hearing, both Dr. Kohl and Dr. Morstatter testified that Isabella removed the clothing of the anatomically correct male and female dolls and placed the adult male on top of the adult female. Because there was no evidence in the record that suggested that Dr. Kohl and Dr. Morstatter prompted such action, the trial court was correct in determining that the third requirement was met. Similarly, the testimony from Isabella's mother, Dr. Kohl, and Isabella's teacher about Isabella's sexual behavior, aggressiveness, and lack of sleep constituted independent proof of the sexual acts in this case; therefore, satisfying Evid.R. 807(A)(3). See Robertson, supra, at 10-11.
 4. Notice of Intent to Use Statements
In the case at bar, the State served its notice to Defendant on October 15, 1999. The hearing was held on November 4, 1999, more than ten days after the notice was served. The State listed the content of the statements, the witnesses who would be testifying about the statements, and the circumstances surrounding the statements. As such, the fourth requirement was satisfied. Therefore, this Court cannot say that the trial court abused its discretion in admitting the statements concerning Isabella's sexual abuse. Defendant's fourth and fifth assignments of error are overruled.
 E. Assignment of Error Number Six Per [Evid.R. 403 and 702], the [trial] court improperly allowed the State to introduce slide show (sic) (photographs of prepubescent and pubescent genitalia) and this prejudiced [Defendant's] right to a fair trial.; (sic) as this slide show was highly prejudicial, confusing for the jury, and misleading to the jury.
In his sixth assignment of error, Defendant has argued that the trial court erred by admitting slides of prepubescent genitalia into evidence during Abbott's expert testimony. Specifically, Defendant has asserted that the slide show violated Evid.R. 702 and 403. This Court will first discuss Abbott's qualifications as an expert and then address her testimony concerning the slides.
 1. Abbott's Expert Qualifications
During trial, Abbott was declared an expert after the State laid the proper foundation. As a pediatric nurse practitioner, Abbott had expert knowledge of a child's anatomy. Further, Abbott testified that during the past eleven years while employed at the Care Center she has conducted numerous physical examinations of children who have alleged that they have been sexually abused. However, Defendant has argued that Abbott was not qualified to offer her expert opinion that a sexual assault can occur without any physical evidence. This Court has held that a nurse practitioner may testify as an expert concerning a patient's physical condition. See State v. Pierce (Feb. 12, 1997), Summit App. No. 17684, unreported, at 5. Secondly, this Court is inclined to adopt the holding in Commonwealth v. Minerd (Pa. 2000), 753 A.2d 225, in which the Supreme Court of Pennsylvania determined that an expert may testify concerning the absence of physical trauma in a sexual abuse case. In this case, Abbott testified that the absence of any physical evidence was inconclusive as to whether any abuse had occurred. Based on the foregoing, this Court concludes that the trial court was correct in allowing Abbott to testify as an expert regarding the physical examination of Isabella.
 2. Slide Show Presentation
Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 403, however, excludes relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury [or] if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."
In the instant case, Abbott presented into evidence slides of genitalia of children who had been abused to demonstrate the area of the body to which she was referring and to show how an abused child could have a normal exam. This Court concludes that while relevant to demonstrate the anatomy of the child, the admission of the slide show was improper. However, the testimony was cumulative, and there is other ample evidence in the record upon which the jury could find Defendant guilty.[3] SeeState v. Crum (Oct. 26, 1998), Stark App. No. 97-CA-0134, unreported, 1998 Ohio App. LEXIS 5678, at *18-19. The admission of Abbott's testimony concerning the slides was not prejudicial because even excluding the slides, the remaining evidence presented at trial proves beyond a reasonable doubt that Defendant committed the alleged offenses. Therefore, any error that occurred in the improper admission of the slide show was harmless. Defendant's sixth assignment of error is overruled.
 F. Assignment of Error Number Seven Since the State's expert witness took the stance that [Isabella] spoke truthfully to her, the [trial] court improperly denied Defendant's motion for a mistrial.
In his seventh assignment of error, Defendant has argued that the trial court erred in failing to exclude the testimony of Dr. Kohl, and that the trial court should have granted his motion for mistrial. Essentially, Defendant has asserted that Dr. Kohl's testimony was prejudicial because it corroborated the fact that the child spoke truthfully to her. This Court disagrees.
As previously mentioned, the admission or exclusion of evidence is a matter committed to the sound discretion of the trial court. See Statev. Allen (1995), 73 Ohio St.3d 626, 633. Similarly, the grant or denial of a mistrial is left to the sound discretion of the trial court. Statev. Widner (1981), 68 Ohio St.2d 188, 190, certiorari denied (1982),456 U.S. 934, 72 L.Ed.2d 452. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.)Bresson, 51 Ohio St.3d at 129.
Pursuant to Evid.R. 702 and 704, expert testimony on the ultimate issue of whether sexual abuse has occurred is inadmissible. State v. Gersin
(1996), 76 Ohio St.3d 491, 494. An expert may not state his opinion as to the veracity of the statements of the child. State v. Boston (1989),46 Ohio St.3d 108, syllabus. However, Boston does not exclude all testimony from an expert in a child sex abuse case. An expert may testify to provide additional support for the truth of the facts testified to by the child or to assist the fact finder in assessing the child's veracity. State v. Stowers (1998), 81 Ohio St.3d 260, 263.
In the instant case, Dr. Kohl never gave her opinion to the veracity of Isabella's statements concerning the alleged abuse. Instead, Dr. Kohl testified that she believed that Isabella knew the difference between a truth and a lie. Dr. Kohl further stated that she tested Isabella's ability to distinguish between a truth and lie by playing a game with her. In light of the foregoing, this Court concludes that the trial court did not abuse its discretion when it admitted Dr. Kohl's testimony and denied Defendant's motion for a mistrial. Defendant's seventh assignment of error is overruled.
 G. Assignment of Error Number Eight Defendant's Sixth Amendment right to counsel was violated by ineffective counsel.
In his eight assignment of error, Defendant has argued that his trial counsel was ineffective for failing to subpoena "Uncle David," not calling Bobby Hall to testify, not conducting an independent investigation of the case, not obtaining a psychiatric evaluation of Isabella, not calling Dr. Muram as an expert, not obtaining a bill of particulars for the specific time period of the alleged abuse, advising Defendant not to testify, not providing any mitigating evidence at sentencing and not requesting a separate sexual predator hearing.
A properly licensed attorney in Ohio is presumed competent. State v.Smith (1985), 17 Ohio St.3d 98, 100. The burden of proving counsel's ineffectiveness, therefore, is on the defendant. Id. A defendant is denied effective assistance of counsel when his attorney's performance falls below an objective standard of reasonable representation and the defendant is prejudiced as a result. State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus. Because a strong presumption exists that counsel's conduct falls within the wide range of reasonable professional assistance, to show prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Id. at paragraph three of the syllabus.
In the case at bar, trial counsel's decision not to call Bobby Hall to testify, conduct a psychiatric evaluation of the child, call Dr. Muram to testify, and subpoena Uncle David are all matters related to trial strategy, made by counsel at the time of trial and, this Court is not in a position to second guess trial counsel's decisions. Such debatable trial tactics do not constitute a denial of effective assistance of counsel. See State v. Mitchell (Sept. 3, 1997), Summit App. No. 18369, unreported, at 3. Moreover, Defendant has not shown how the outcome of the trial would have been different. With regard to the remaining arguments, this Court notes that Defendant's claims relate to matters outside the scope of this record and should not have been raised in this appeal. Because Defendant's claims may depend upon facts, which were outside the record, the proper vehicle for prosecution is a petition for postconviction relief, pursuant to R.C. 2953.21, not a direct appeal to this Court. See State v. Cooperrider (1983), 4 Ohio St.3d 226, 228. In conclusion, trial counsel's performance did not fall below an objective standard of reasonableness; therefore, Defendant was not denied effective assistance of counsel at trial. Defendant's eighth assignment of error is overruled.
 H. Assignment of Error Number Nine The trial court improperly allowed into evidence Dr. Kohl's counseling notes.
In his ninth assignment of error, Defendant has argued that the trial court erred when it allowed Dr. Kohl's counseling notes into evidence. This Court is compelled to mention that Defendant has failed to support his arguments with any legal authority. Pursuant to App.R. 16(A)(7), Defendant has the duty "to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v. Taylor (Feb. 9, 1999), Medina App. No. 2783-M, unreported, at 7. Because Defendant has failed to comply with App.R. 16(A)(7), he has not demonstrated any error by the trial court. Accordingly, Defendant's ninth assignment of error is overruled.
 I. Assignment of Error Number Ten The [trial] court improperly overruled Defendant's [Crim.R. 29] motion for acquittal.
 Assignment of Error Number Eleven
The jury verdict was against the manifest weight of the evidence.
In his tenth and eleventh assignments of error, Defendant has challenged the sufficiency and the weight of the evidence supporting his conviction. His arguments must fail.
Crim.R. 29(A) provides that a trial court must grant an acquittal if the evidence is insufficient to sustain a conviction of such offense. In other words, if the evidence, viewed in the light most favorable to the State, is such that a reasonable mind might fairly find guilt beyond a reasonable doubt, the trial court shall not grant an acquittal, and the issue will be presented to the jury. Id. at 263; see, also, State v.Thompkins (1997), 78 Ohio St.3d 380, 386.
At this point, this Court notes that evaluations of the sufficiency of the evidence put forth by the State and the weight of the evidence adduced at trial are separate and legally distinct determinations. Statev. Gulley (Mar. 15, 2000), Summit App. No. 19600, unreported, at 3. While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. Thompkins,78 Ohio St.3d at 390 (Cook, J. concurring). In determining whether the State has met its burden of persuasion, a reviewing court does not view the evidence in the light most favorable to the State. Gulley, supra, at 3. Instead, a reviewing court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. A new trial is warranted only in the exceptional case where the evidence weighs heavily in favor of the defendant. Id. "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasissic.) State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4.
R.C. 2907.02(A)(1) provides, in part:
 No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
Further, R.C. 2907.05(A) provides:
 No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
* * *
 (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
At trial, Isabella's mother, Bethanie, testified that she began dating Defendant around 1990 or 1991. After approximately three years of dating, she broke up with Defendant and never told him that she was pregnant with Isabella. When Isabella was almost four years old, Bethanie allowed Defendant to visit.[4] Shortly thereafter, Bethanie allowed Isabella to spend every weekend at Defendant's house.
Bethanie testified that she soon noticed some changes in Isabella's behavior. Isabella began wetting the bed at night, gained weight, and started talking like a baby. Bethanie stated that Isabella was potty trained when she was two years old.
Bethanie testified that, during June of 1998, after spending a weekend with Defendant, Isabella complained that her privates hurt. When Bethanie asked why, Isabella responded that Defendant had put his "tail" on her privates. Bethanie explained that Isabella would use the word "tail" to describe a male's genitals. She noticed that there was a slight reddening in Isabella's private area, but did not do anything about it. During the autumn of 1998, Isabella complained again that her privates hurt. Bethanie testified that after talking to Defendant's sister, Melinda Pigott, she finally ceased visitation and went to the police.
Melinda Pigott testified that she watched Isabella during February of 1999 for approximately two weeks. On one occasion, Pigott had to pick Isabella up at school because she had been misbehaving. Since it was not Isabella's nature to be misbehaving, Pigott decided to find out if anything was bothering Isabella. She began asking Isabella what makes her happy and sad. Isabella responded that it made her sad when Defendant touched her with his tail. When Pigott inquired where did Defendant touch her, Isabella pointed to her vagina. Lastly, Isabella told Pigott that only Defendant has touched her with his tail.
Detective Donald Zesiger testified that, on February 26, 1999. Bethanie came into the police department to file a complaint alleging child abuse. Detective Zesiger took her complaint and started investigating the matter. He contacted Detective Darlene Hoover about the compliant and made an appointment to have Isabella examined.
Elizabeth Morstatter, a social worker, testified that she interviewed Isabella. She first asked questions to determine whether Isabella knew the difference between a truth and lie. Next, she asked Isabella about her family. When asked about Defendant, Isabella told Morstatter that he had done bad things to her with his "tail." Isabella stated that Defendant would "do it in her private area" and then make her "take a nap after he's done with his tail." Isabella described Defendant's tail as "squishy." Isabella also told Morstatter that she never felt anyone else's tail. When given anatomical dolls to play with, Morstatter observed Isabella place the adult male doll on top of the female doll, pull the penis out of the clothes of the male doll, pull down the pants of the female doll, and place the penis near the vaginal area of the female doll.
Michelle Schock, a teacher at Color Our Rainbow Academy, testified that she had Isabella as a student from March 1999 to August 1999. She stated that she began documenting Isabella's inappropriate behavior. Schock testified that almost every day Isabella would masturbate prior to her nap. Schock stated that Isabella would masturbate to the point where she was huffing and puffing and sweating. She also observed Isabella touch another boy's privates and, on a separate occasion, saw Isabella and another boy hitting their buttocks together.
Dr. Charel Kohl, a psychologist, testified that Isabella came to her office for therapy. During the session, Isabella would play with anatomical dolls. Isabella identified the adult male doll as her dad. She would remove the dolls clothing and place the male doll on top of the female doll. During one session, Dr. Khol observed Isabella attacking the male doll by jumping on it and yelling at it. Dr. Kohl testified that during the sessions Isabella would vent anger that she had been storing for a long time.
Dr. Kohl also testified that Isabella told her that Defendant started putting his "tail" in her private area around Valentine's Day when she was four years old. According to Dr. Kohl, Isabella stated that "[i]t hurt like heck and I cried." Isabella also told Dr. Kohl that she had tasted Defendant's pee and described it as "sticky, salty, yucky, yucko." Dr. Kohl also learned that Isabella had trouble sleeping and would wet the bed. Based on her sessions, Dr. Kohl diagnosed Isabella with post-traumatic stress disorder. Dr. Kohl testified that Isabella's behavior during the sessions, her trouble sleeping, and bed-wetting were consistent indicators of victims of sexual abuse.
Donna Abbott also testified on behalf of the State. She examined Isabella at Akron Children's hospital for signs of sexual abuse. Abbott stated that Isabella's exam was normal; however, based on her experience, Abbott testified that an abused child could have a normal exam.
Angela Jones, a teacher for Akron's Head Start Program testified on behalf of Defendant. Jones stated that Isabella was a student in her class during the 1998-1999 school year. She never noticed any behavioral problems with Isabella during that time period. Jones testified that Isabella left the school during March 1999. Finally, Rhonda Talbert, another teacher at the Head Start Program, testified that she did not notice any unusual behavioral problems with Isabella.
Although there was no physical evidence of rape introduced with respect to Isabella, it was within the purview of the jury to assess the credibility of the witnesses and to determine whether Defendant was guilty of rape and gross sexual imposition as charged. This Court will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other. State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4. The jury was entitled to believe the testimony of the State's witnesses. This Court concludes that this is not an exceptional case in which the weight of the evidence warrants a new trial. Moreover, "[b]ecause sufficiency is required to take a case to the jury, [and] a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency," (Emphasis sic) see. Roberts, supra, at 4, Defendant's assertion that the State failed to present sufficient evidence to support his conviction, therefore, is also without merit. Defendant's tenth and eleventh assignments of error are overruled.
 J. Assignment of Error Number Twelve The [trial] court improperly sentenced Defendant to consecutive sentences.
In his twelfth assignment of error, Defendant has asserted that the trial court failed to state the necessary findings required under R.C.2929.14(E) when sentencing him to a consecutive sentence. This Court disagrees.
This Court recently applied the rationale of State v. Edmonson (1999),86 Ohio St.3d 324, and held that trial courts are required to make findings and give reasons to support the imposition of consecutive sentences. See State v. Riggs (Oct. 11, 2000), Summit App. No. 19846, unreported, at 2. In Riggs, this Court held that Edmonson requires a trial court to use some language that is close, if not identical, to the statutory criteria when articulating its findings. Id. at 3.
R.C. 2929.14(E)(4) sets forth three findings a trial court must make before imposing a consecutive sentence. A trial court must find that:
 [T]he consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
The record of the sentencing hearing of the case at bar reveals that the trial court found that:
 imposing the shortest prison term in this case would demean the seriousness of this crime, because of the consequences to the victim, because there has been a long history of sexual deviance, because there is a denial of responsibility on the part of the offender, because there have been multiple violations, not only of criminal law, but of the incest taboo in our society, the Court finds that imposing the shortest prison term will not adequately protect the public from future crimes because of the multiple offenses, the likelihood that — an offender with this record and with these circumstances, the likelihood of reoffending is so substantial that society requires protection. And the victimization of young children is such that they are not capable as future victims of protecting themselves.
The journal entry stated that:
 consecutive sentences are necessary to protect the public and punish the offender, not disproportionate to the conduct and to the danger the offender poses, and
 (1) the harm was so great or usual that single prison term does not adequately reflect the seriousness of the conduct;
 (2) the offender's criminal history shows that consecutive terms are needed to protect the public;
(3) prior record;
(4) anything less would demean the seriousness of the offense;
(5) because of the consequences to the victim;
(6) history of sexual deviance;
(7) history of sexual deviance;
(8) incest;
(9) and likelihood of recidivism.
Based on the foregoing, this Court concludes that the trial court made the requisite findings and provided the necessary reasons for imposing consecutive sentences. Defendant's twelfth assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM G. BATCHELDER
BATCHELDER, P. J. CONCURS
BAIRD, J. CONCURS IN JUDGMENT ONLY
[1] Although Defendant has mentioned Abbott in his fifth assignment of error, he fails to point to any particular statements concerning her testimony. Instead, Defendant has actually challenged the testimony of the social worker, Morstatter. Consequently, this Court will not discuss Abbott's testimony with regard to this argument but will discuss Morstatter's testimony.
[2] With the exception, however, that this Court will later address the testimony of the psychologist and social worker regarding Isabella's actions with anatomical dolls in relation to Defendant's argument that such actions did not constitute independent proof.
[3] This Court is also compelled to mention that the slide show presentation may be considered prejudicial in the future when there is not an abundance of evidence in the record to sustain a conviction.
[4] The visitation arrangement was not set by a court. Rather, Isabella's parents informally agreed to the terms of visitation.